IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No. 2:03-CR-739 |
| vs. | ) | |
| | ) | **SENTENCING ORDER** |
| THOMAS JOSEPH DALTON, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on remand from the United States Court of Appeals for the Fourth Circuit for the purpose of resentencing Thomas Joseph Dalton. For the reasons set forth below, the court sentences Mr. Dalton to 105 months in prison, three years of supervised release, $39,286.13 in restitution, and a $100 special assessment.

## I. BACKGROUND

On March 1, 2004, Mr. Dalton pled guilty to one count of credit card fraud. On September 8, 2004, this court sentenced Mr. Dalton to a term of 105 months in prison, three years of supervised release, $98,851.64 in restitution, and a $100 special assessment. Mr. Dalton appealed, and the Fourth Circuit remanded following the United States Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005). At the conclusion of the second sentencing hearing, this court resentenced Mr. Dalton to the same sentence ordered on September 8, 2004, but this time under the advisory sentencing guidelines.

Mr. Dalton once again appealed the sentence; he argued that the sentence imposed was "unreasonable." The Fourth Circuit disagreed, holding that "the district court's

1

conclusion that 'Dalton's criminal history category of six does not adequately reflect [his] past criminal conduct or his chances of recidivism' was a reasonable one." United States v. Dalton, 477 F.3d 195, 198 (4th Cir. 2007). Nonetheless, the Fourth Circuit remanded, instructing this court to "explain its criminal history calculations, specifying which arrests and convictions form the basis for the additional points." Id. "Even where an upward departure from Criminal History Category VI is plainly warranted, a sentencing court must depart incrementally, explaining the reasons for its departure." Id. at 199. The Fourth Circuit held that "the [district] court 'should structure the departure by *moving incrementally down the sentencing table* to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case.'" Id. (quoting U.S.S.G. §4A1.3(a)(4)(B) (2004)).

Mr. Dalton appeared before this court for resentencing on January 6, 2010. Prior to the hearing, the government filed the same motion for an upward departure as previously filed on August 27, 2004. During the hearing, the court granted defense counsel's request to base Mr. Dalton's sentence on the criminal history calculations from the original presentence report, dated July 7, 2004, instead of those in the March 2, 2007 presentence report. The court also agreed to reconsider the restitution amount of $98,851.64, based on alleged errors in the computation of actual loss. The court orally imposed the same sentence of incarceration entered on the two prior occasions, subject to reconsideration of the restitution amount.[1] The court now issues this written order.

---

[1] Following the resentencing hearing, the United States Attorney's Office, Mr. Dalton, and the United States Probation Office agreed that the correct actual loss amount, and thus the correct restitution amount, is $39,286.13.

## II.  DISCUSSION

Pursuant to United States Sentencing Guideline (U.S.S.G.) §4A1.3(a)(1) (2004), if reliable information indicates that a Criminal History Category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range.  Section 4A1.3(a)(2) lists factors the court may consider in an upward departure.[2]  In accordance with §4A1.3, United States v. Cash, 983 F.2d 558 (4th Cir. 1992), United States v. Rusher, 966 F.2d 868 (4th Cir. 1992), United States v. Streit, 962 F.2d 894 (9th Cir. 1992), and United States v. Myers, No. 08-4343, 2009 WL 4877760 (4th Cir. Dec. 16, 2009), the court finds that Mr. Dalton's Criminal History Category of VI does not adequately reflect his past criminal

---

[2]The factors listed are:

    (A)    Prior sentence(s) not used in computing the criminal history category (e.g., sentences for foreign and tribal offenses).

    (B)    Prior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions.

    (C)    Prior similar misconduct established by a civil adjudication or by a failure to comply with an administrative order.

    (D)    Whether the defendant was pending trial or sentencing on another charge at the time of the instant offense.

    (E)    Prior similar adult criminal conduct not resulting in a criminal conviction.

U.S.S.G. §4A1.3(a)(2)(A)-(E) (2004).  Factors (A) and (E) are particularly applicable in Mr. Dalton's case.

conduct or likelihood of recidivism and again departs upwardly in this case.

In Cash, the Fourth Circuit identified three approaches available to the court when contemplating a departure, once it has concluded that the defendant's Criminal History Category is inadequate. 983 F.2d at 561-62. One of those approaches is for the court to determine the extent of the departure by extrapolating from the sentencing table. Id. at 561. This extrapolation can be accomplished by "extending" the sentencing table horizontally by adding criminal history categories (in cases where the Criminal History Category is less than VI), or by moving vertically down the table to successively higher offense levels in Category VI. Id. at 561 n.7. The Fourth Circuit later added:

> And while a court should indicate its reasons for departing upward under section 4A1.3, it need not "incant the specific language used in the guidelines," or "go through a ritualistic exercise in which it mechanically discusses each Criminal History Category [or offense level] it rejects en route to the category [or offense level] that it selects."

Dalton, 477 F.3d at 199 (internal citations omitted). Since Mr. Dalton's Criminal History Category is already a Category VI, the court must move vertically down the sentencing table to a higher offense level.

Mr. Dalton has a total of forty arrests since 1975. Of these arrests, twenty-four were convictions. Twenty-one of these convictions charge some type of theft or fraud. One conviction charges a violent offense and involved the use of a weapon. In the "Criminal History Computations" section of the July 7, 2004 presentence report, Mr. Dalton was not given points for nine convictions that occurred more than fifteen years prior to the instant offense. These convictions, had they been counted, would result in fourteen additional criminal history points. Additionally, Mr. Dalton has eleven

convictions that were not awarded criminal history points because they were considered "related" pursuant to §4A1.2, Application Note 3. If the court were to have considered these offenses separately, there would have been an additional thirty-one points awarded. Mr. Dalton has fifteen criminal history points, two points above the minimal requirement for a Criminal History Category of VI. If one takes into account the forty-five potential criminal history points which had no impact on his Criminal History Category, Mr. Dalton's criminal history is not adequately reflected in the Criminal History Category of VI. In such a case, a departure above the guideline range for a defendant with a Criminal History Category of VI is warranted.

Regarding the risk of recidivism, Mr. Dalton admitted to committing fraudulent criminal acts while incarcerated by the Florida Department of Corrections (FDC). He committed the instant offense within two years of being released from the FDC and while on supervised release for a credit card fraud conviction whereby he owed $61,359.45 in restitution (Criminal No. 2:98-CR-01004-DCN). While in the custody of the Charleston County Detention Center, awaiting disposition of this case, Mr. Dalton again engaged in fraud. He used fraudulently obtained credit card accounts to make purchases totaling more than $3,000 from businesses such as Pizza Hut, Danbury Mint, Barnes & Noble, and Pro Flowers. In addition, Mr. Dalton used one of the accounts to purchase a credit report.[3] This continuing pattern of criminal behavior reflects a high probability of

---

[3] The court notes that the *only* logical purpose for Dalton to use a fraudulently obtained credit card account to purchase a credit report is to engage in additional fraudulent acts.

recidivism.[4] Mr. Dalton would pose a serious threat to the community when released, if the instant offense, coupled with the defendant's reoccurring criminal behavior, is not adequately addressed at this time. Mr. Dalton is a "career offender" in every aspect of such a characterization, although not formally recognized as such pursuant to §4B1.1.

In fashioning the departure, the Court finds that forty-five potential criminal history points were not attributable–fourteen falling outside of the countable time frame, and thirty-one due to the convictions being "related" pursuant to §4A1.2, Application Note 3. Forty-five uncounted criminal history points, in addition to the fifteen countable criminal history points, yields a total of forty-seven additional points beyond the minimum to establish a Criminal History Category of VI.

If one considers each Criminal History Category as a range of three points and divide the additional forty-seven points by three, this would establish an equivalence of approximately sixteen additional offense levels. A departure of sixteen levels would result in an upward departure to an offense level of 32 and a guideline range of 210 to 262 months; however, as the statutory maximum penalty in this case is ten years, the guideline becomes 120 months. Despite the guideline of 120 months, the court finds no reason to change the 105-month sentence imposed during the two prior

---

[4]Pursuant to an agreement between the government and Mr. Dalton, the court did not consider additional charges recently filed against Mr. Dalton. In March 2009, in Criminal No. 4:09-CR-00339-TLW, a federal grand jury in Florence, South Carolina, indicted Mr. Dalton for participating in a tax fraud scheme while he was incarcerated for the instant offense. The indictment charged Mr. Dalton with one count of conspiracy to commit tax fraud, twenty-seven substantive counts of tax fraud, one count of theft in excess of $1,000 from the Internal Revenue Service (IRS), and one count of identity theft. As a result of the offenses above, the indictment alleges that the IRS paid approximately $415,523 in fraudulently-claimed refunds.

sentencings.

In reaching its decision, the court has also considered the factors set forth in 18 U.S.C. § 3553(a), including the seriousness of the offense, Mr. Dalton's history and characteristics, the applicable sentencing guidelines range, and the need for restitution. Section 3553(a) requires the court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a) (2003). Those purposes are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). The need for an upward departure in Mr. Dalton's case is apparent in light of purposes (A) through (C) under paragraph (a)(2). The actual loss ($39,286.13), and the loss intended by Mr. Dalton ($113,146.10), reflect the serious nature of the instant offense. Mr. Dalton's continued willingness to commit crimes, *even while incarcerated*, shows no respect for the law and an extremely high probability of recidivism. An upward departure is necessary to provide just punishment for Mr. Dalton. An upward departure is also necessary to deter Mr. Dalton from committing future crimes and to protect the public from further financial victimization.

# III.  CONCLUSION

After calculating and considering the advisory sentencing guidelines, and having also considered the relevant statutory sentencing factors contained in 18 U.S.C. § 3553(a), it is the judgment of the court that the defendant, Thomas Joseph Dalton, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 105 months; said term shall run consecutively to the supervised release revocation in Criminal No. 2:98-cr-1004.  Mr. Dalton shall pay a $100 special assessment fee and restitution in the amount of $39,286.13[5], both due beginning immediately.  Interest is hereby waived on the restitution.

Upon release from imprisonment, Mr. Dalton shall be placed on supervised release for a term of 3 years.  Within 72 hours of release from custody of the Bureau of Prisons, he shall report in person to the probation office in the district to which he is released.

---

[5]On January 15, 2010, Mr. Dalton filed a motion to reconsider the sentence orally imposed by this court on January 6, 2010.  One issue raised in the motion, and now rendered moot by this order, is whether the actual loss, and thus the restitution amount, was incorrectly stated as $98,851.64 in the two prior sentencings.  Upon review, all parties agree that the correct actual loss is $39,286.13.  This order imposes the corrected restitution amount in Mr. Dalton's sentence.

A second issue raised in the motion is whether the change in actual loss should have a corresponding impact on the 105-month prison sentence imposed by the court.  U.S.S.G. §2B1.1, Application Note 3 (2004), states that "[s]ubject to the exclusions in subdivision (D), loss [for guidelines calculation purposes] is the greater of actual loss or intended loss."  The exclusions in subdivision (D) do not apply in this case, and Mr. Dalton admits that the actual loss "is much less than the 'intended loss' calculated and applied in the Pre-Sentence Report."  Mot. 2.  Therefore, the sentencing guidelines are properly based on the intended loss in Mr. Dalton's case.  Accordingly, the court **DENIES** Mr. Dalton's motion for reconsideration of the 105-month prison sentence.

While on the term of supervised release, Mr. Dalton shall comply with the mandatory and standard conditions of supervision outlined in 18 U.S.C. § 3583(d). Mr. Dalton shall also comply with the following special conditions:

1. The defendant shall pay restitution of $39,286.13 at a rate of $300 per month beginning 60 days after his release from imprisonment. Payments shall be made payable to the U.S. District Clerk of Court, P. O. Box 835, Charleston, S.C. 29402.

2. The defendant shall participate in a program of testing and treatment for substance abuse as directed by the U.S. Probation Officer until such time as the defendant is released from the program by the probation officer.

3. The defendant shall not open any new or additional lines of credit or obtain a checking account without prior written approval by the U.S. Probation Officer.

4. The defendant shall provide access to any and all financial information including but not limited to income tax returns.

5. The defendant shall participate in a program of mental health counseling and/or treatment as deemed necessary by the U.S. Probation Officer until such time as the defendant is released from the program by the probation officer.

6. The defendant shall not have access to a computer or the Internet without prior approval from the U.S. Probation Office.

   **AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON
CHIEF UNITED STATES DISTRICT JUDGE**

**February 2, 2010
Charleston, South Carolina**